Argued January 6, affirmed March 11, 1970
PORTLAND GOLF CLUB, *Respondent, v.*
STATE TAX COMMISSION,
*Appellant.*
465 P. 2d 883

*Alfred B. Thomas,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Lee Johnson, Attorney General, and Theodore W. de Looze, Assistant Attorney General, Salem.

*Samuel B. Stewart,* Portland, argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, HOLMAN and TONGUE, Justices.

O'CONNELL, J.

Defendant appeals and plaintiff cross-appeals from a decree of the Tax Court fixing, for ad valorem tax purposes, the valuation of land owned by plaintiff, The Portland Golf Club.

The true cash value of plaintiff's property was determined by Washington County to be $1,075,000 of which $451,000 was the value of the land, $241,000 the value of land improvements, and $383,000 the value of the clubhouse building. The Washington County Board of Equalization and defendant, the State Tax Commission, affirmed the appraisal. The Tax Court reduced the value of the land from $451,000 to $308,000. 3 OTR 366 (1969).

Defendant contends that the $451,000 valuation should be reinstated. Plaintiff contends on cross-appeal that the valuation determined by its expert witness, which was $232,800, should be accepted as the true cash value of the land.

The parties are in agreement that the highest and best use of the property is for a golf course.

Defendant's valuation of the land was reached by determining the value of property surrounding the golf course. The value of the surrounding property was based upon its use for residential purposes. Defendant's theory of valuation is that the highest and best use of plaintiff's property is for golf course purposes but that the value of the golf course land can

be determined by taking the value of an alternate inferior use. It is then assumed that residential use is an inferior use, and the value for residential purposes is taken as the value for golf course purposes. This is patently fallacious.

The assumption that a residential use is inferior to the use for golf course purposes is purely gratuitous. The value of the surrounding property was established upon the assumption that the highest and best use of that property was for residential purposes. Defendant wants this value based upon the highest and best use for residential purposes to be shifted over to the golf course land whose highest and best use it is agreed is for golf course purposes. This is not permissible.

It is apparent why defendant desires to make its evaluation on this basis. If defendant were to admit that the golf course land was being valued on the assumption that the highest and best use of that land was for residential purposes, the land improvements and the clubhouse would have little or no value in relation to residential uses in fixing the valuation for tax purposes. To include the value of the clubhouse and improvements in the assessment scheme defendant is forced to start with the premise that the highest and best use of the property is for golf course purposes. But if this is the premise, defendant cannot then take the inconsistent position that the land is not to be regarded as being used for golf course purposes but for residential purposes.

The impropriety of this method of appraisal is noted in an article in the Assessor's Journal, April, 1969, by Stanley T. Ooka and Herbert R. Welder, Jr.,

entitled "Valuation of a Golf Course for Tax Assessment Purposes." The authors state, at p. 8:

"In the cost approach, the assessor should add to the value of the land the cost of land improvement (which would include items such as grading, water system, landscaping, drainage) plus cost of the buildings, less depreciation. With this approach, it is extremely important that the raw land value be estimated as restricted to golf course use when the land and building improvement values are based on golf course use.

"If the assessor appraises the raw land on the basis of the value for alternate higher uses, he cannot then add to the full value of the golf course improvements to the country club. It is a common fault to value the land at its highest and best use and then turn around and add the value of the improvements for another use. Such practice obviously would produce an inflated value ⁕ ⁕ ⁕."

It seems obvious that the highest and best use of the land which comprises plaintiff's golf course is for residential purposes. The fiction employed by defendant that the highest and best use is for golf course purposes forces one to think of the value of the land in terms of a basis which does not exist in the real world. We are reminded of Professor Thomas Reed Powell's definition of a legal mind—"If you can think about something which is attached to something else without thinking about what it is attached to, then you have what is called a legal mind."

If the highest and best use of land is in fact for residential purposes but we make the assumption that its highest and best use is for some other purpose, the only way out of the dilemma is to look at the value of land employed for such other purposes. This was precisely what plaintiff's appraiser and the Tax Court

did in making their appraisals. Both arrived at the value of the land by comparing it with the price paid for golf course land by other golf clubs within 60 miles of Portland. These purchases would, of course, normally not include residential land and in this respect the comparison is inappropriate. However, in our opinion this is as close to reality as one can come in making an appraisal in the unreal world which is created by the assumption that the highest and best use of plaintiff's land is not for residential purposes.

The Tax Court appraised plaintiff's land at $308,000, which was $75,200 higher than the appraisal made by plaintiff's expert witness. In its cross-appeal plaintiff attacks the Tax Court's appraisal contending that there was no basis for the increase in valuation. The Tax Court based its increase in valuation on the ground that the location of plaintiff's golf course "would appear to be in a more expanding and favorable area than the fourteen golf courses considered in his study," referring to the appraisal study prepared by plaintiff's expert witness.

We think that the proximity of the golf course to a densely populated and growing area in Washington County could be regarded as making plaintiff's golf course more desirable as a golf course than the more remote golf courses which were used by plaintiff's witness as a basis of comparison.

Decree affirmed.